UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| Adan Salgado, | ) Case No. 15bk33812 |
| Debtor. | ) Chapter 7 |
| Hector Vallecillos, | ) |
| Plaintiff, | ) |
| v. | ) Adversary No. 16ap00511 |
| Adan Salgado, | ) Judge Timothy A. Barnes |
| Defendant. | ) |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION[1]

This matter comes before the court on the Creditor's First Amended Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to Section 727 of the Bankruptcy Code [Adv. Dkt. No. 12] (the "Complaint") filed by Hector Vallecillos (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary"). Despite the title of the Complaint, the Complaint seeks only the denial of the discharge of Adan Salgado (the "Debtor") under section 727 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

Each of the two counts of the Complaint is promulgated under section 727(a)(4)(A) of the Bankruptcy Code, the provision regarding false oaths or accounts. Count I alleges that the Debtor misrepresented under oath his previous ownership of three pieces of real property. Count II alleges that the Debtor made false statements under oath regarding his possession of tools and employment status.

The matter was tried before the court in a two-day trial that began on July 17, 2018 and concluded on July 18, 2018 (the "Trial"). Having considered all the evidence and arguments and for the reasons set forth herein, the court finds that the Plaintiff fails to satisfy the statutory

---

[1] This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate judgment will be entered pursuant to Bankruptcy Rule 9021.

requirements of Count II. The Plaintiff has, however, carried his burden with respect to Count I. Accordingly, the Debtor's discharge will be denied.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 23 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall*, 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or where the matter is either one that falls within the public rights exception, *id.* at 493, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

An adversary proceeding to deny the debtor's discharge may only arise in a case under the Bankruptcy Code and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Steege v. Johnsson (In re Johnsson)*, 551 B.R. 384, 389 (Bankr. N.D. Ill. 2016) (Barnes, J.) ("Section 727 is unequivocally a bankruptcy cause of action."). The matter is therefore core and within the court's jurisdiction, as each of the parties agree. *See* Compl., at ¶¶ 6, 7; Debtor's Answer to Creditor's First Amended Complaint [Adv. Dkt. No. 40] (the "Answer"), at ¶¶ 6, 7. In light of these admissions and as neither party has raised a challenge to the court's constitutional authority, the court concludes that it either has constitutional authority directly or through the parties' consent.

Accordingly, the court has the jurisdiction, statutory authority and the constitutional authority to hear and determine this Adversary.

## PROCEDURAL HISTORY

In considering the relief sought by the Plaintiff, the court has considered the evidence and arguments presented by the parties at the Trial, has reviewed the Complaint, the attached exhibits submitted in conjunction therewith, and has reviewed and found each of the following of particular relevance:

(1) Answer;

(2) Plaintiff-Creditor's Answer to Defendant-Debtor's Affirmative Defenses [Adv. Dkt. No. 43];

(3) Order Granting and Denying Plaintiff-Creditor's Motion for Summary Judgment [Adv. Dkt. No. 78];

(4) Order Granting and Denying Debtor/Defendant's Motion for Summary Judgment [Adv. Dkt. No. 79] (together with Adv. Dkt. No. 78, the "Partial Summary Judgment Orders");

(5) Final Pretrial Order Governing Creditor's Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to Section 727 of the Bankruptcy Code [Adv. Dkt. No. 112] (the "Final Pretrial Order");

(6) Joint Pretrial Memorandum [Adv. Dkt. No. 125] (the "Pretrial Statement"); and

(7) Stipulations [Adv. Dkt. No. 126] (the "Stipulations").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter and in the underlying bankruptcy case, *In re Adan Salgado*, Case No. 15bk33812 (Bankr. N.D. Ill. filed Oct. 10, 2015) (Barnes, J.). *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

Prior to proceeding to the Trial, each of the parties sought summary judgment in the matter. *See* Joint Motion for Summary Judgment Against [sic] Defendant-Debtor and in favor of Plaintiff-Creditor Hector Vallecillos [Adv. Dkt. No. 61]; Debtor's Motion for Summary Judgment [Adv. Dkt. No. 62]. On October 10, 2017, the court conducted a hearing on the crossing motions. At that hearing, the court determined that there was no material dispute regarding three of the elements of Count I: (1) the statements being made under oath; (2) the statements being false; and (3) the statements being materially related to the bankruptcy case. The court found the facts and applicable law favored the Plaintiff, thus finding the Plaintiff satisfied these three elements required under section 727(a)(4)(A) of the Bankruptcy Code.

3

The court found there to be a material dispute regarding the Debtor knowingly and fraudulently making the false statements, however. Summary judgment will almost never be available when fraudulent intent is a part of the cause of action. This is because intent is a factual issue that is ordinarily a subjective inquiry, making the Debtor's testimony and credibility germane to this determination.

Through the motions for summary judgment, the court was also able to resolve the Debtor's affirmative defenses. The court determined that English as a second language is not an affirmative defense, but rather is part of the analysis when determining fraudulent intent. The court also determined that unclean hands is not an applicable defense under section 727 as a violation of section 727 is an offense against the bankruptcy estate, not any individual creditor. As a result, the court entered orders granting in part and denying in part each of the respective motions. *See* Partial Summ. J. Orders.

## EVIDENTIARY RULINGS

On February 27, 2018, the court entered the Final Pretrial Order in the Adversary. The Final Pretrial Order states that:

> No motion *in limine* is necessary for any objection raised in the Pretrial Statement. Any other motions *in limine* will be due with the Pretrial Statement unless the court orders otherwise. Any exhibit to which an objection is not raised in the Pretrial Statement will be received in evidence without the need to establish foundation. Any objection to an exhibit (other than weight/relevance) which is **not** raised in the Pretrial Statement will be waived. Whether evidence is considered by the court and what weight the court gives the evidence depends upon the party relying on such evidence to demonstrate at the trial the relevance and reliability of that evidence in relation to the party's case. If an exhibit is not mentioned by the parties at the trial, it will not be considered to be relevant by the court.

Final Pretrial Order, at p. 1.

On June 29, 2018, the parties jointly submitted the Pretrial Statement. On that same date, in addition to the stipulations in the Pretrial Statement, the parties separately submitted the Stipulations. Each of the parties' stipulations, those in the Pretrial Statement and those in the Stipulations, bind the parties. To the extent they differ in a way material to the outcome of this matter, that difference will be resolved herein.

In the Pretrial Statement, each of the parties raised numerous objections to the other party's exhibits. Among those objections are numerous objections on the basis of relevance. While it is true that Federal Rule of Evidence 403 affords the court the authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403, the purpose of the Final Pretrial Order's statement regarding weight and relevance is for parties not to file such objections. As this court has stated numerous times in the past:

> 'In the bankruptcy court, the bankruptcy judge is the fact-finder.' *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1178 (7th Cir. 1994). In that role, the court is more than

capable of determining the weight of any judicially noticed fact, *In re Hood*, 449 Fed. Appx. 507, 510 (7th Cir. 2011) ('the bankruptcy court was entitled as the trier of fact to decide how to weigh the evidence before it'), and in that role Judge Posner has instructed that the court in a bench trial may 'admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled.' *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), *aff'd*, 365 F.3d 1306 (Fed. Cir. 2004), *opinion vacated on reh'g en banc and aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

*In re Tabor*, 583 B.R. 155, 166 (Bankr. N.D. Ill. 2018) (Barnes, J.). For the same reasons, prejudice and confusion are not effective objections in a bench trial. *Schaumberg Bank & Trust Co. v. Hartford (In re Hartford)*, 525 B.R. 895, 900 n.1 (Bankr. N.D. Ill. 2015) (Barnes, J.).

As a result, all relevance, weight, prejudice and confusion objections raised by the parties were overruled.

In addition, a number of objections were raised regarding hearsay. Unless an exception applies, hearsay as defined in Federal Rule of Evidence 801 is inadmissible. *See* Fed. R. Evid. 802. The rule against hearsay, however, makes clear that hearsay is defined by its use. Fed. R. Evid. 801(c)(2) (hearsay is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). Given that hearsay is difficult to determine until a party actually attempts to use a statement in trial, all hearsay objections were preserved for the Trial.

One objection of particular importance was to the admissibility of a letter from the Debtor's counsel to the chapter 7 trustee assigned to the Debtor's bankruptcy case (the "Trustee"). *See* PX No. I.[2] While, on its face, the letter appears more helpful to the Debtor in establishing an immediate attempt to rectify the alleged misstatements than it was harmful, the Debtor objected to the admission and use of the letter under Federal Rule of Evidence 408. Rule 408 provides that evidence is "not admissible—on behalf of any party— ... to impeach by a prior inconsistent statement or a contradiction ... conduct or a statement made during compromise negotiations about the claim ...." Fed. R. Evid. 408(a)(2). The Debtor argued that the letter to the Trustee was in the nature of a compromise and thus could not be used for any purpose, including impeachment. At the time of the objection, the court was convinced that the letter, though it makes no mention of settlement or compromise, was contextually in the nature of a compromise and sustained the objection. The letter, PX No. I, has not therefore factored into the court's analysis herein.

Finally, two evidentiary rulings were taken under advisement at the Trial. The court allowed use of the exhibits at the Trial while reserving ruling on the objections to both.

The first was labeled Plaintiff's Exhibit No. CC at the Trial.[3] The Exhibit is a sworn affidavit provided by an employee of Visio Limited, the company that sold all three of the Properties (defined *infra*) to the Plaintiff. The Plaintiff sought to admit the Exhibit to establish the dates that the Debtor entered into the contracts to purchase the Properties. The Debtor objected to the Exhibit as hearsay.

---

[2] In this case, the Plaintiff and the Debtor submitted individual and joint exhibits with consecutive letter designations. *See* Pretrial Stmt., Exh. 1. The court will use the designations DX, PX and JX for Defendant's Exhibit, Plaintiff's Exhibit and Joint Exhibit, respectively.

[3] This exhibit was not included in the Pretrial Statement due to an error, but was submitted in court and assigned an exhibit number at that time.

That objection is well taken. *E.g., Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 604 (7th Cir. 2000) ("Certainly, the [plaintiff's] affidavit would not be admissible at trial unless [defendant] were able to cross-examine [the affiant] as to its contents."). The Exhibit is also clearly not the best evidence of the closing dates. As the Plaintiff failed to use the Exhibit during the Trial, the court would have assigned it a weight of zero even if it were admitted. As a result, the objection to Plaintiff's Exhibit No. CC is sustained.

The second objection was to Plaintiff's Exhibit No. K. This Exhibit is the interrogatory answers of the Debtor. The Debtor objected to the Exhibit's admission, except for the purposes of impeachment. During the Trial, the Plaintiff used the Exhibit to impeach the witness, but did not otherwise use the Exhibit. As result, the court has been given no reason to consider this Exhibit beyond the impeachment use, to which the Debtor did not object. Plaintiff's Exhibit No. K is therefore excluded, except as it was used for impeachment purposes.

## BACKGROUND[4]

The Debtor purchased and took title to three pieces of real property in 2010, 2011 and 2012, respectively: (1) 1143 N. Keystone Avenue, Chicago, Illinois (the "Keystone Property"); (2) 843 N. Hamlin Avenue, Chicago, Illinois (the "Hamlin Property"); and (3) 8223 45th Street, Lyons, Illinois (the "Lyons Property") (collectively, the "Properties"). In March 2013, the Debtor transferred the Properties into a trust for his mother's, Maria Chavez-Espinoza ("Chavez"), benefit. Chavez has been the landlord for all of the leases entered into for the Properties since the transfer.

In April 2015, the Plaintiff obtained two default judgments against the Debtor from the Circuit Court of Cook County. The judgments were for breach of contract relating to the Properties and unpaid wages relating to a tire shop the Debtor and the Plaintiff previously operated together. The Debtor subsequently filed for bankruptcy under chapter 7 in October 2015 and listed the Plaintiff as a creditor.

On December 18, 2015, the Debtor attended the meeting of creditors required under 11 U.S.C. § 341 (the "341 Meeting"). A translator was not present at the 341 Meeting even though English is the Debtor's second language and he is better able to communicate in Spanish. During the 341 Meeting, the Plaintiff's counsel asked the Debtor if he ever owned the Properties. The Debtor replied "no" to ever owning each of the Properties. The Debtor subsequently testified at an examination authorized by Bankruptcy Rule 2004 in June 2016 (the "2004 Examination"), where he clarified that he had in fact owned the Properties and transferred the Properties, but alleged he purchased the Properties with Chavez's money that Chavez had received from an insurance check, and transferred the Properties to her in replace of returning the money to her.

---

[4] The background facts are derived from the facts agreed upon by both parties, as presented in the Pretrial Statement.

## FINDINGS OF FACT[5]

From the review and consideration of the procedural history, as well as the evidence presented at the Trial, the court determines the salient facts to be as follows, and so finds that:

(1)  The Debtor is originally from Mexico. He moved to the United States when he was a teenager and has lived in the United States for more than twenty years. Tr. at p. 107, July 17, 2018; Tr. at p. 216, July 18, 2018.

(2)  The Debtor's first language is Spanish. Although he reads and understands English, he is better able to communicate in Spanish. Pretrial Stmt., at p. 6, ¶ 17.

### A. The Properties:

(3)  The Debtor and the Plaintiff are former brother-in-laws and business partners who made a plan to purchase properties, rehab them and "flip them" for a profit. *Id.*, at p. 4, ¶ 1; Tr. at pp. 62, 73-74, July 17, 2018.

(4)  In April 2010, the Debtor entered into an installment contract to purchase the Keystone Property for $20,273.00. Stipulations, at ¶ 2.

(5)  In August 2010, Chavez received an insurance check for $70,759.00. Chavez and the Plaintiff went to a bank together and deposited the check into a bank account in the Plaintiff's name. Pretrial Stmt., at p. 4, ¶ 2; JX. No. F, at p. 54. Chavez, however, was under the impression the check was deposited into an account under her name. Tr. at p. 148, July 17, 2018. The money from the insurance check was soon thereafter transferred into an account held by the Debtor. *Id.* at p. 162.

(6)  The Debtor took title to the Keystone Property in November 2010. *Id.* at pp. 72, 97; Pretrial Stmt., at p. 4, ¶ 3.

(7)  The Debtor entered into the contract to purchase the Hamlin Property in April 2011 for $27,595.00 and took title to the Hamlin Property in September 2011. Stipulations, at ¶ 3; Pretrial Stmt., at p. 5, ¶ 4.

(8)  The Debtor purchased the Lyons Property for $33,052.00 and took title to the Lyons Property in February 2012. Stipulations, at ¶ 4; Pretrial Stmt., at p. 5, ¶ 6.

(9)  The Debtor used the money from Chavez's insurance check in part to purchase the Properties. Tr. at p. 73, July 17, 2018. Chavez did not give permission to the Debtor to purchase the Properties with her money. *Id.* at p. 148. The Debtor never discussed with Chavez about purchasing the Properties and the Debtor purchased the

---

[5]  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

  Properties without Chavez's knowledge. *Id.* at p. 149. The Debtor and Chavez were not on speaking terms with one another at the Properties' purchase dates. *Id.*

(10)  The Debtor had tenants in the Properties during the time he held title to the Properties and collected rent from them. *Id.* at p. 65. He used the rent proceeds to help fund the tire shop he owned and operated with the Plaintiff. *Id.* at pp. 101-02. The Debtor spent time rehabbing the Properties but was ultimately unable to "flip them" and sell them for a profit as planned. *Id.* at p. 62.

(11)  In March 2010, the Debtor transferred the Properties to Chavez through a land trust with Chavez as the beneficiary of the trust. The Debtor transferred the Properties to Chavez in replace of returning her money to her. *Id.* at p. 64.

(12)  In December 2015, the Debtor attended the 341 Meeting where a translator was not present. The Debtor never asked for a translator and at no point said he did not understand the questions. *Id.* at p. 91; Pretrial Stmt., at p. 6, ¶ 18.

(13)  At the 341 Meeting, the Trustee asked the Debtor if he had owned any real property in the past four years. The Debtor replied "well, a house," referring to a house that was foreclosed on. When the Trustee asked the Debtor if he had owned any other properties in the past four years, the Debtor replied "no." JX. No. A, at pp. 2-3.

(14)  At the 341 Meeting, the Plaintiff's counsel asked the Debtor if he ever owned the Lyons Property. The Debtor replied "no." The Plaintiff's counsel asked the Debtor if he ever owned the Keystone Property. The Debtor replied "no." The Plaintiff's counsel asked the Debtor if he transferred the Keystone property in 2013. The Debtor replied "no." The Plaintiff's counsel asked the Debtor if he ever owned the Hamlin Property. The Debtor replied "no." The Plaintiff's counsel asked the Debtor if he transferred the Hamlin Property in 2013. The Debtor replied "no." *Id.*, at p. 4.

B. <u>Tools and Employment Status:</u>

(15)  The Trustee asked the Debtor at the 341 Meeting if he was unemployed. The Debtor replied that he was. The Trustee also asked the Debtor what happened to the equipment and other assets from the tire shop. The Debtor replied saying he had left everything at the shop for the landlord. *Id.*

(16)  Chavez allowed Carlos Mora to store tools in the garage located at 2741 N. Merrimac Avenue, Chicago, Illinois 60639 (the "<u>Merrimac Property</u>"). Tr. at p. 172, July 17, 2018.

## DISCUSSION

  The "central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt . . . .'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (*quoting Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

In short, a chapter 7 discharge gives a "fresh start." *Id.* at 286-87. However, a discharge in bankruptcy is not a fundamental right and the fresh start policy is limited to the honest but unfortunate debtor. *Grogan*, 498 U.S. at 286; *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). "The denial of a discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Squires, J.). To promote these policies, courts construe requests to deny a debtor's discharge strictly against the creditor and liberally in favor of the debtor. *Juzwiak*, 89 F.3d at 427.

With these overriding principles in mind, the court will first consider the standards before it under section 727(a)(4)(A) of the Bankruptcy Code. Following, before analyzing the elements of the section 727(a)(4)(A) standards in relation to the Complaint's two Counts, the court will consider the Defendant's credibility as a witness in this matter. The court will then analyze the two Counts of the Complaint, beginning first with the less complicated of the two Counts, Count II.

A.  11 U.S.C. § 727(a)(4)(A)

Section 727 of the Bankruptcy Code provides that the court may not grant a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

Section 727(a)(4)(A) enforces the debtor's duty of disclosure and ensures the debtor provides reliable information to the parties interested in the administration of the bankruptcy estate. *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 889 (Bankr. N.D. Ill. 2003) (Schmetterer, J.); *Urological Grp., Ltd. v. Petersen (In re Petersen)*, 296 B.R. 766, 790 (Bankr. C.D. Ill. 2003). It places a duty on debtors to report the interests they have held in property even if the debtors believe the property to be unavailable to the bankruptcy estate. *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992). After all, it is the court's determination, not the debtor's, what property is part of the bankruptcy estate. *Id.* at 905.

In order to succeed under 727(a)(4)(A) the plaintiff must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *see also In re Hudgens*, 149 Fed. Appx. 480, 487 (7th Cir. 2005); *Molfese v. Bonomi (In re Bonomi)*, Case No. 11bk26652, Adv. No. 13ap00119, 2014 WL 640982, at *4 (Bankr. N.D. Ill. Feb. 18, 2014) (Barnes, J.). The plaintiff must prove all of these so-called *Stamat* factors by a preponderance of the evidence. *Hudgens*, 149 Fed. Appx. at 487; *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999).

Many of the *Stamat* factors may be determined objectively. As previously discussed, the court has already determined that the first, second and fifth of the *Stamat* factors have been satisfied with respect to the Debtor's denial of previous ownership and transfer of the Properties. *See* Partial Summ. J. Orders.

Even if a false oath has been established, as it has been here, the plaintiff must still show that such false oath relates to a material matter. *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987). A statement is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Costello*, 299 B.R. at 900. The false oath does not need to result

9

in any prejudice to the creditors to be deemed material. *Bensenville Comm. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992) (Schmetterer, J.); *Richardson v. Von Behren (In re Von Behren)*, 314 B.R. 169, 180 (Bankr. C.D. Ill. 2004).

More difficult to objectively determine is the fourth *Stamat* factor—intent. This is why so many of these types of matters proceed to trial on the issue of intent. *Layng v. Garcia (In re Garcia)*, 569 B.R. 480, 491 (Bankr. N.D. Ill. 2017) (Barnes, J.) ("the testimony of a [d]ebtor as to intent is the most frequent material fact preventing section 727 matters from being resolved in summary judgment").

"To find the requisite degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth." *Yonikus*, 974 F.2d at 905. "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Reckless disregard is the state of mind of not caring whether some representation is true or false. *Id.* Direct evidence of intent to defraud may not be available. *Costello*, 299 B.R. at 900. "Thus the requisite intent under section 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 248 (Bankr. N.D. Ill. 2005) (Squires, J.). "Intent may properly be inferred from the totality of the circumstances and the conduct of the person accused." *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 904 (7th Cir. 1991).

Intent may also be inferred if a debtor's bankruptcy schedules reflect a "reckless indifference to the truth." *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 355 (Bankr. N.D. Ill. 1988) (Barliant, J.). However, discharge should not be denied where the untruth was the result of mistake or inadvertence. *Cole Taylor Bank v. Yonkers (In re Yonkers)*, 219 B.R. 227, 233 (Bankr. N.D. Ill. 1997) (Squires, J.); *Lanker v. Wheeler (In re Wheeler)*, 101 B.R. 39, 49 (Bankr. N.D. Ind. 1989).

With these issues in mind, before proceeding to the Counts of the Complaint, the court must first consider the credibility of the Debtor as a witness.

B.   The Debtor's Credibility

As is not uncommon with questions of a debtor's intent, the Debtor was the most important witness at the Trial. For the reasons discussed here, however, the court does not find the Debtor to be a credible witness.

The Debtor displayed a cavalier attitude throughout his testimony by evading questions posed by the Plaintiff and displaying a general lack of interest in attempting to answer said questions. For example, the Debtor was highly evasive when being asked about the purchase price and dates of the Properties. Tr. at pp. 68-72, 98-99, July 17, 2018. The Debtor was also combative, at one point threatening to fight opposing counsel. *Id.* at p. 104. This sort of behavior does not lend itself to a finding of credibility. *Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 87 (Bankr. N.D. Ill. 2002) (Black, J.) ("'[T]he carriage, behavior, bearing, manner, and appearance of a witness-in short, his 'demeanor'-is a part of the evidence.") (*quoting Dyer v. MacDougall*, 201 F.2d 265, 268 (2d Cir. 1952)). Further, a court may take into account the interest the witnesses may have in the outcome of the case. *Id. (citing Welch v. Tenn. Valley Auth.*, 108 F.2d 95, 101 (6th Cir. 1939)).

It should be noted that, in addition to suffering credibility issues, the Debtor's testimony was inconsistent with his previous testimony and filings with this court and, in some cases, implausible.

For example, as discussed below, the Debtor's explanation of why he denied ownership and transfer of the Properties has evolved throughout the case. First he argued that he had denied ownership as he had purchased the Properties with Chavez's money and considered them to be hers. Debtor's Motion to Dismiss Pursuant to Rule 7012 of the Rules of Bankruptcy Procedure, at ¶ 18 [Adv. Dkt. No. 17-1] (the "Debtor's Motion to Dismiss"); Debtor's Motion for Summary Judgment, at ¶ 24; Pretrial Stmt., at pp. 2-3, ¶ 1. Then he argued and testified at the Trial that he did not understand the questions because of his lack of proficiency with English. Tr. at pp. 91-93, July 17, 2018; Tr. at pp. 218-19, July 18, 2018. Last, at the Trial, the Debtor seemed to adopt a new explanation that while he owned the Properties, his transfer of the Properties was done to correct his misuse of Chavez's money, so he did not believe it required disclosure. Tr. at p. 214, 234, 239, July 18, 2018.

Similarly, the Debtor denied in his Answer having entered into the contracts to purchase the Properties for his personal benefit. Answer, at ¶¶ 17, 19, 21, 47. At the Trial, however, his testimony demonstrated that his own personal funds were included in those used to purchase the Properties, tr. at p. 89, July 17, 2018, that he managed the Properties as his own until they were transferred, *id.* at pp. 62-65, and that he took the income from the Properties and used them for his own personal benefit. *Id.* at p. 102. With respect to the Elston Tire Shop, prior to the Trial, the Debtor admitted to having an ownership interest. Answer, at ¶ 47; Debtor's Motion to Dismiss, Affid. [Adv. Dkt. No. 17-4]. At the Trial, he was adamant that he had nothing to do with the Elston Tire Shop. Tr. at pp. 75-76, July 17, 2018.

In summary, the court finds the testimony of the Debtor to be of limited probative value in his defense.

C.   The Complaint

As previously noted, the Complaint is organized into two Counts, each under section 727(a)(4)(A). The more straightforward of the Counts is Count II, the allegations regarding the Debtor's employment and tools. The court will therefore consider Count II before looking to Count I.

   1.   *Count II: Employment and Tools*

Count II alleges that the Debtor, under oath, misrepresented his unemployment status and failed to disclose his ownership of tools he was storing in the garage at the Merrimac Property.

These statements were made both as part of the Debtor's schedules filed with the court and later at the 341 Meeting. JX. No. A, at p. 4. As such, these statements are under oath for the purposes of satisfying the *Stamat* factors. *Hartford*, 525 B.R. at 907-08 ("A debtor's petition, schedules, statement of financial affairs, statements made at a section 341 meeting, testimony given at a Bankruptcy Rule 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of section 727(a)(4)(A)."). The first *Stamat* factor is satisfied.

11

The fifth factor is also satisfied, as both the tools and the Debtor's employment status "bear a relationship to the debtor's business transactions or estate, or concern the discovery of assets . . . ." *Costello*, 299 B.R. at 900.

The second factor has not, however, been satisfied. Not unsurprisingly, the Debtor at the Trial denied owning the tools or operating a tire shop out of the garage. Tr. at pp. 115-16, July 17, 2018; Tr. at p. 207, July 18, 2018. That testimony is questionable given the Debtor's inconsistent statements concerning his role at the Elston Tire Shop, his self-interest in the matter and his general credibility issues. However, the Debtor's testimony was corroborated by Chavez, who the court found to be forthright and credible. Chavez testified that the Debtor neither stored tools in the garage at the Merrimac Property nor operated a tire shop from said garage. Tr. at pp. 172-73, July 17, 2018.

No other evidence offered by the Plaintiff went to the Plaintiff's burden on this matter. As a result, the court cannot conclude on the record before it that the statements and alleged omissions denying ownership of the tools and claiming unemployment are false. The Plaintiff has failed to establish an essential element of section 727(a)(4)(A) on Count II of the Complaint. As a result, the Debtor need not defend and the court need not discuss the third and fourth elements. Judgment on this Count will be rendered in favor of the Debtor.

2.　*Count I: The Properties*

Given the court's earlier narrowing of the issues on this Count, what remains is whether the Debtor made the false statements regarding the Properties knowingly and with fraudulent intent. For the reasons set forth below, the court finds that he did.

Beginning with this: There was no equivocation in the statements made by the Debtor at the 341 Meeting. The questions by the Trustee and the Plaintiff's counsel were direct and clear. The Debtor showed no signs of confusion, nor did he ask for clarification, or request the translation assistance he now argues that he needed.

With respect to that latter issue, it should be tautological that court proceedings in the United States are conducted in English. *United States v. Rivera-Rosario*, 300 F.3d 1, 5 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English."). A meeting under section 341 of the Bankruptcy Code is just such a proceeding.

It would be fundamentally unfair, however, to deny a debtor the ability to participate meaningfully in his or her bankruptcy proceedings because the debtor does not speak English. As a result, in accordance with Exec. Order No. 13166, 65 Fed. Reg. 50121 (Aug. 11, 2000) (Improving Access to Services for Persons with Limited English Proficiency), the United States Trustee's Program makes interpreters available for free upon request. As the handbook for chapter 7 trustees states, "[i]ndividuals with limited English proficiency (LEP) may seek assistance in order to participate in the meeting of creditors. The trustee must advise LEP individuals of free telephone and interpreter services offered by the program for the purposes of the meeting or that they may choose, at their expense, a qualified interpreter to assist them. 28 U.S.C. § 586." Handbook for Chapter 7 Trustees, at p. 3-6.

There was, therefore, the ability to receive free translation assistance at the 341 Meeting. The Debtor, who was represented by counsel who could and should have advised him of his ability to avail himself of the same by claiming limited English proficiency, made no request for an interpreter. Thus, the Debtor, who professed at the Trial that in all his meetings with his attorneys he had the assistance of his wife as an interpreter, tr. at pp. 91-92, July 17, 2018, and who arranged an interpreter for the Trial itself, chose to attend the 341 Meeting without any such assistance. While the court is sympathetic to the Debtor's claims, his actions do not lend credence to his claim of language issues. The Debtor has lived in the United States for more than twenty years and agreed in the Pretrial Statement that he "speaks English when necessary, and understands and reads English." Pretrial Stmt., at p. 6, ¶ 17. Further, on at least one occasion at the Trial, the Debtor answered the question posed to him in English before the interpreter could translate. Tr. at p. 163, July 17, 2018.

The questions before the Debtor at the 341 Meeting should not have come as a surprise. As noted above, the Debtor commenced his underlying bankruptcy case after having received an adverse judgment in state court litigation with the Plaintiff here. The court finds it difficult to believe that the Debtor did not understand that, when he was questioned at the 341 Meeting by an attorney for the Plaintiff, the very same issues were in play. His denial of an interest in or transfer of the Properties under those circumstances strikes more as an intentional tactic to obstruct the Plaintiff's attempts to see these issues fully aired before the court.

The court therefore concludes that the Debtor's statements at the 341 Meeting regarding his ownership and transfer of the Properties were knowingly false. As to whether these statements were made with fraudulent intent, as just noted, the court finds it likely that the Plaintiff's denials at the 341 Meeting were an intentional obstruction of the Plaintiff. As such, the statements were made with fraudulent intent. Even absent that, as noted above, the court may infer intent from the totality of the circumstances. For the totality of the circumstances discussed herein, the court makes such an inference here.

The Debtor has also shown a pattern of reckless disregard for the truth starting at the 341 Meeting and continuing through the Trial. *See Yonikus*, 974 F.2d at 906 (finding the debtor's evasive responses to questions to be of significance in finding a pattern of fraudulent deception); *Dilbay v. Demir (In re Demir)*, 500 B.R. 913, 923 (Bankr. N.D. Ill. 2013) (Schmetterer, J.) (taking the debtor's inconsistent statements at trial into account in determining a pattern of reckless disregard). The multiple inconsistencies in the Debtor's testimony, lack of credibility at the Trial and false statements at the 341 Meeting demonstrate at the very least a pattern of reckless disregard for the truth.

The Plaintiff has, therefore, established his *prima facie* case under section 727(a)(4)(A). The Debtor, in response, defends with the language issues, his belief regarding the ownership of the Properties and his belief regarding the transfers. None of these theories are convincing.

As previously noted, the Debtor's language proficiency is in question. Even if he is of limited English proficiency, however, he chose not to avail himself of an interpreter at the 341 Meeting when one was available for free. He made no indication in his answers of any difficulty understanding the questions put to him. Rather than support his defense, his argument bolsters the case for recklessness. *See, e.g., Layng v. Urbonas (In re Urbonas)*, 539 B.R. 533, 551 (Bankr. N.D. Ill. 2015) (Lynch, J.) ("'it be [speaks] a reckless indifference to truth' for a non-native speaker not to seek advice of counsel if the debtor does not understand the legal meaning of a term necessary to accurately complete schedules.") (*quoting Skarysh v. Katsman (In re Katsman)*, 771 F.3d 1048, 1050 (7th Cir. 2014)).

It also speaks to willful ignorance.[6] The Debtor's argument regarding English proficiency does not defeat the Plaintiff's *prima facie* case.

The Debtor's argument that he believed the Properties were owned by Chavez is also unconvincing. While it appears true that a large portion of the purchase price for the Properties came from Chavez (without her knowledge), the evidence does not support a conclusion that the Properties were therefore hers. Not only did the Debtor use a portion of his own money to purchase the Properties, but he contracted to purchase and titled the Properties in his name. The Debtor admitted to purchasing the Properties without Chavez's knowledge and with the business purpose of rehabbing them and "flipping them" for a profit. During the time that he held title to the Properties, the Debtor had tenants who he collected rent from and used the rent proceeds to help fund his tire shop. He also eventually transferred the Properties into a land trust for Chavez's benefit. All of these actions are inconsistent with a belief that the Properties were somehow Chavez's before the transfer.

Finally, the Debtor touched on the defense of not being an educated businessman. Bankruptcy courts have used the debtor's education and business experience in determining fraudulent intent. *See Stamat*, 635 F.3d at 982 (finding debtor's education and business experience factored into a showing of reckless disregard); *Chavin*, 150 F.3d at 729 (debtor was a mature and experienced businessman making it unbelievable he did not understand to disclose certain assets).

While the Debtor is not a highly educated man, his experience in business and testimony demonstrate he knew his past ownership of the Properties should have been disclosed. *See Wilson*, 290 B.R. at 333, n.2 (finding a debtor with below level of sophistication and understanding clearly understood the transfer of a property should have been disclosed at a creditor's meeting). The Debtor owned real property before he purchased the Properties and was involved in litigation regarding that property. Tr. at p. 207, July 18, 2018. The Debtor purchased the Properties as a business investment, intending to renovate and "flip them." Further, the Debtor was at one point the part owner of a business. Finally, when the Debtor transferred the Properties to Chavez, it was not by way of a simple conveyance, but by a land trust. All of these factors speak to the Debtor's ability to understand his business dealings and some modicum of legalities regarding real property and title held thereto.

The court therefore finds the Plaintiff has proven by a preponderance of the evidence that the Debtor made the statements denying past ownership and transfer of the Properties knowingly

---

[6] Bankruptcy courts have held that debtors may not plead willful ignorance in defense of their false statements. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987). "The Debtor has the ultimate responsibility for the accuracy of the information contained in their schedules, which cannot be avoided by playing ostrich." *Rafool v. Wilson (In re Wilson)*, 290 B.R. 333, 340 (Bankr. C.D. Ill. 2002). A debtor must consider the questions posed at a 341 meeting carefully and answer them accurately and completely. *Armstrong v. Lunday (In re Lunday)*, 100 B.R. 502, 508 (Bankr. D.N.D. 1989); *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 361 (Bankr. N.D. Ill. 2002) (Squires, J.). If taken as true, the Debtor's testimony of not understanding the questions at the 341 Meeting while never asking for an interpreter or expressing misunderstanding is willful ignorance. This is unacceptable for section 727(a)(4)(A) purposes.

and with fraudulent intent. Accordingly, the Plaintiff has satisfied all of the elements required under section 727(a)(4)(A) for the court to enter judgment in favor of the Plaintiff regarding Count I.

## CONCLUSION

The Plaintiff has shown that the Debtor acted with fraudulent intent when he denied his previous ownership and transfer of the Properties at the 341 Meeting thus satisfying the burden under Count I. The Plaintiff has not, however, satisfied his burden regarding Count II of the Complaint.

For the foregoing reasons, judgment will be entered in favor of the Plaintiff under section 727(a)(4)(A) on Count I of the Complaint. Judgment will be entered in favor of the Defendant on Count II of the Complaint. A separate judgment will be issued with this Memorandum Decision.

Dated: August 16, 2018

ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

AH